## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

| | |
|---|---|
| TIGER A. ROGERS, | |
| Petitioner, | |
| v. | CAUSE NO.: 3:24-CV-72-TLS-JEM |
| WARDEN, | |
| Respondent. | |

### OPINION AND ORDER

Tiger A. Rogers, a prisoner without a lawyer, filed a habeas corpus petition challenging a disciplinary proceeding at Indiana State Prison (ISP 22-09-0183) in which he was found guilty of spitting on a correctional officer. ECF No. 1. The Warden has filed a response arguing that the petition should be denied. ECF No. 10. Mr. Rogers filed a traverse in support of his petition, ECF No. 23, along with a "Motion for Production of Exculpatory Evidence," ECF No. 22.[1] For the reasons stated below, the petition is denied.

I.   BACKGROUND

The charge against Mr. Rogers was initiated on September 25, 2022, when Sergeant M. Mitchell wrote a conduct report stating as follows:

> On 9-25-22 at approx. 943 pm I Sgt M. Mitchell was securing incarcerated individual Rogers #906321 who is housed in cell 225 south. I Sgt. M. Mitchell gave Rogers a direct order to turn around so I could take the cuffs off and he refused. Rogers #906321 then spat at me, in which I moved out of the way.

---

[1] He also filed a document labeled, "Proposed Status Report," ECF No. 24, but it appears this was filed in response to an order that was inadvertently docketed in this case and has since been vacated. *See* ECF No 18.

ECF No. 10-1. Officer S. Robinson was present during this incident and wrote a report, stating that she witnessed Mr. Rogers refuse direct orders from Sergeant Mitchell and walk toward the back of his cell. ECF No. 10-2. Officer T. Beck also wrote a report stating that she witnessed Mr. Rogers refusing orders. ECF No. 10-11 at 16. Neither report mentions whether the officers saw Mr. Rogers spit at Sergeant Mitchell. *See* ECF 10-2, 10-11 at 16.

On October 11, 2022, Mr. Rogers was formally notified of the charge and given a copy of the conduct report. ECF No. 10-4; ECF No. 10-1. He pled not guilty and requested a lay advocate, and one was appointed for him. ECF No. 10-4; ECF No. 10-5. He requested to cross-examine Sergeant Mitchell, Officer S. Robinson, and Officer T. Beck, stating, "I spit on the wall in my cell because I was sprayed. All 3 of them are mad at me for racial derogatory statements I said." ECF No. 10-4. He also requested review of the surveillance video, which in his opinion would show "no spit towards Sgt. Mitchell or out of my cell." *Id.*

The hearing officer, Lieutenant Castaneda (first name unknown),[2] postponed the hearing several times due to a heavy caseload and the need to conduct further investigation. ECF No. 10-8 at 1–6. Mr. Rogers' request to cross-examine the officers was denied for security reasons, ECF No. 10-4, but the hearing officer reviewed the surveillance video as he requested, ECF No. 10-6. Her report of the video noted that various events were depicted between 9:41 p.m. and 9:49 p.m., including Sergeant Mitchell talking to Mr. Rogers from outside his cell, reaching for her pepper spray and spraying it into the cell, and then continuing to stand outside his cell until other officers arrived, at which pointed he was escorted out of his cell in handcuffs. ECF No. 10-7.

---

[2] The Court notes that this officer's last name is spelled a variety of different ways in the record and in the parties' filings. The Court uses the spelling that the officer used when she signed certain forms in the record. *See, e.g.*, ECF No. 10-8 at 1.

The hearing officer further noted that due to the camera angle, the video did not reveal whether Mr. Rogers spit at Sergeant Mitchell during this incident. *Id.*

On December 29, 2022, a hearing was held.[3] Mr. Rogers pled not guilty and made the following statement in his defense, "Not guilty the camera evidence proves it and there's a witness statement provided." ECF No. 10-6. He submitted a witness statement from inmate B. Phillips, who was located in cell B207 and stated, "He don't spit on her." ECF No. 10-9. After considering the evidence, the hearing officer found Mr. Rogers guilty. ECF No. 10-6. Among other sanctions, she imposed a suspended sanction of 180 days lost earned credit time. *Id.* The suspended sanction was later enforced when Mr. Rogers was found guilty of a new battery offense in February 2023. *Id.*; ECF No. 10-10.

II.   ANALYSIS

When prisoners lose earned credit time in a disciplinary proceeding, the Fourteenth Amendment Due Process Clause guarantees them certain procedural protections: (1) at least 24 hours advance written notice of the charge; (2) an opportunity to be heard by an impartial decisionmaker; (3) an opportunity to call witnesses and present documentary evidence consistent with institutional safety and correctional goals; and (4) a written statement by the decisionmaker of the evidence relied on and the reasons for the decision. *Wolff v. McDonnell*, 418 U.S. 539, 563–65 (1974). To satisfy due process, there also must be "some evidence" to support the hearing officer's decision. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

The Court understands Mr. Rogers to be asserting four claims in his petition: (1) the evidence of his guilt was insufficient; (2) he was denied the assistance of a lay advocate; (3) his

---

[3] It appears from the hearing officer's notations that a hearing was convened on November 7, 2022, but was not completed for unknown reasons. The guilty finding occurred on December 29, 2022. *See* ECF No. 10-6.

3

rights were violated because his hearing was postponed; and (4) he was denied an impartial decisionmaker. ECF No. 1 at 3–5. The Respondent argues that Mr. Rogers has not established that his due process rights were violated in connection with these claims.[4]

A. Sufficiency of the Evidence

Mr. Rogers first challenges the sufficiency of the evidence. He articulates this claim in a variety of different ways in his petition and traverse, including that he is innocent, that he never spit on the officer, and that the video of the incident exculpates him. The "some evidence" test "is a lenient standard, requiring no more than a modicum of evidence." *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) (cleaned up). "Even 'meager' proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Id.* (cleaned up). A conduct report alone can be sufficient evidence to support a finding of guilt. *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). Likewise, circumstantial evidence can be sufficient to satisfy the "some evidence" test. *Meeks v. McBride*, 81 F.3d 717, 721 (7th Cir. 1996). Furthermore, it is not the province of a federal habeas court to reweigh the evidence to make its own determination of guilt or innocence. *Webb*, 224 F.3d at 652. Rather, the only question is whether there is some evidence to support the hearing officer's determination. *Id.*

Mr. Rogers was found guilty of Offense A-117, "Battery Against a Staff Person, Volunteer, Visitor, or Contractor." ECF Nos. 10-3, at 3, 10-6. This offense is defined by the Indiana Department of Correction ("IDOC") disciplinary code as: "Committing battery against a staff person, volunteer, independent contractor, or visitor." ECF No. 10-3 at 3. Battery, in turn, is

---

[4] The parties disagree about whether Mr. Rogers properly exhausted his administrative remedies before filing the petition, but the Warden has expressly elected not to pursue an exhaustion defense. *See* ECF No. 10 at 5–6. Therefore, the Court need not consider the matter of exhaustion.

defined as "[k]nowingly or intentionally touching another person in a rude, insolent or angry manner; or in a in a rude, insolent, or angry manner placing any bodily fluid or bodily waste on another person."[5] ECF 10-14 at 3. The definition of "body fluid" includes saliva and "any other liquid produced by the body." *Id.*

The Court has carefully reviewed the video evidence and contrary to Mr. Rogers' arguments, it does not exculpate him. Instead, it is inconclusive. Because of the quality of the video, the camera angle, and the presence of a metal gate in front of the camera, it cannot be determined from the video whether Mr. Rogers spit at Sergeant Mitchell as she was standing outside his cell. The video does corroborate other aspects of Sergeant Mitchell's account, including that she and Mr. Rogers had an interaction directly outside his cell on the date and time in question. The video also shows her shifting her position and stepping back at different points, which would be consistent with her account that she moved away when he spit at her. Indeed, Mr. Rogers admitted that he spit during this incident, although he claimed it was not in Sergeant Mitchell's direction.[6] ECF No. 10-4. The hearing officer was not required to credit his account, nor was this a criminal trial where guilt had to be proven beyond a reasonable doubt. *Moffat v. Broyles*, 288 F.3d 978, 981–82 (7th Cir. 2002). Instead, there only had to be "some" evidence of guilt to satisfy due process. *Meeks*, 81 F.3d at 721. The report of Sergeant Michell provides sufficient evidence to support the hearing officer's guilty finding.

---

[5] "Rude" and "insolent" are not defined by the disciplinary code, but Webster's Dictionary defines rude as "offensive in manner or action" or "discourteous." Webster's Dictionary, *Rude.* https://www.merriam-webster.com/dictionary/rude. Certainly, spitting on someone qualifies as offensive or discourteous, and Mr. Rogers does not argue otherwise.
[6] It is evident that he was angry with Sergeant Mitchell and Officer Robinson during this incident (which occurred shortly after a shakedown of his cell by these officers), as he acknowledges calling them a "fat slob" and "gorilla" as they were standing outside his cell. (ECF 23 at 18; *see also* ECF 10-11 at 20.) He also appeared agitated on the video when he is later escorted from his cell.

5

Mr. Rogers appears to claim that he could not be found guilty because there is no evidence his spit actually landed on Sergeant Mitchell. Her report is not definitive either way; it merely states that she moved when he spat in her direction. Nevertheless, circumstantial evidence can be sufficient to support a guilty finding, and here the evidence is not so lacking as to make the hearing officer's guilty finding arbitrary. Sergeant Mitchell's account was that she was standing directly outside Mr. Rogers' cell when he spat at her, and the video confirms that was where she was standing. Mr. Rogers himself finds it unlikely that she could have avoided being spit on given where she was standing, stating that she is a "not-so-agile" woman who would have been unlikely to "exact an escape from saliva that would have been traveling at a high rate of speed." ECF No. 23 at 19–20. In reviewing a decision for some evidence, courts "are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the [hearing officer's] decision to revoke good time credits has some factual basis." *McPherson*, 188 F.3d at 786 (cleaned up). That standard is satisfied here.

Mr. Rogers may also be arguing that his rights were violated because he did not get to review the video evidence himself.[7] Inmates have a due process right to request and present evidence when consistent with institutional safety and correctional goals. *Wolff*, 418 U.S. at 564, 566. Mr. Rogers requested that the video be considered, and it was in fact obtained and considered by the hearing officer. She was not required to disclose the video to him because prison disciplinary bodies are "entitled to receive, and act on, information that is withheld from the prisoner and the public[.]" *White v. Ind. Parole Bd.*, 266 F.3d 759, 767 (7th Cir. 2001).

---

[7] In a rather confusing argument, he refers to two different videos being reviewed by the hearing officer, but it can be discerned that the other video is from a separate disciplinary charge (also initiated on September 25, 2022) for "impairing surveillance" after a curtain was found hanging in his cell when it was searched by Sergeant Mitchell and the other officers. *See* ECF No. 10–11; ECF No. 23-1 at 6.

Furthermore, the Court has reviewed the video and concludes that it could compromise prison security to disclose this evidence to Mr. Rogers, as it would reveal the location and capabilities of the prison surveillance system. *See Wolff*, 418 U.S. at 566; *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011). Although he suggests in his traverse that he already knows the capabilities of the camera system, the Court declines to permit him to add to that knowledge. He has not established a due process violation on this ground.

B.   Lay Advocate

Mr. Rogers next claims he was denied the assistance of a lay advocate. It is evident from the record that Mr. Rogers was provided with a lay advocate, ECF No. 10-5, but he argues that his rights were violated because he did not have an opportunity to meet with his lay advocate prior to the hearing. It appears he is relying on internal prison policy in making this argument. *See* ECF No. 23 at 2–3. Even if he is correct in his argument, a violation of prison policy does not provide a basis for granting him federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008).

For due process purposes, a lay advocate is only required when an inmate is illiterate or where the issues are unduly complex. *Wolff*, 418 U.S. at 570; *Miller v. Duckworth*, 963 F.2d 1002, 1004 (7th Cir. 1992). Mr. Rogers' filings reflect that he is not only literate but capable of writing convincingly in his own defense. He filed a detailed administrative appeal, a habeas petition, and a 114-page traverse, all of which contain cogent arguments challenging the hearing officer's finding of guilt. This was also not a particularly complex case. The sole issue to be decided was whether Mr. Rogers spit on a correctional officer. He was able to mount a defense in that he denied the accusation, obtained a witness statement from another inmate who said he did not spit at the officer, and requested review of the surveillance video, which he thought

would exonerate him. His "displeasure with his lay advocate's performance [or] lack of help in preparing his case doesn't amount to a due process violation." *Cutler v. Warden*, No. 3:17-CV-477, 2018 WL 4468963, at *3 (N.D. Ind. Sept. 18, 2018). This claim is denied.

  C. Postponements

He next claims that his rights were violated because his hearing was postponed several times and he was not notified about the postponements until the day the hearing was scheduled. Being given advance notice of a postponement is not a right enumerated in *Wolff*, and the Court is not permitted to expand upon those rights. *White*, 266 F.3d at 768; *see also Davis v. Superintendent*, No. 3:16-CV-609, 2017 WL 2533662, at *3 (N.D. Ind. June 12, 2017) (observing that the petitioner "didn't have a due process right to a speedy disciplinary hearing" under *Wolff*). If he is relying on prison policy in making this argument, a violation of prison policy does not provide a basis for granting him federal habeas relief. *Estelle*, 502 U.S. at 67–68; *Keller*, 271 F. App'x at 532.

Additionally, the Seventh Circuit has held that a claim about delays in the hearing process necessarily fails if the prisoner does not show that his defense was prejudiced. *Jones*, 637 F.3d at 846; *see also Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003) (harmless error analysis applies to prison disciplinary proceeding). Mr. Rogers does not demonstrate prejudice, other than to suggest in his traverse that the postponements impacted the performance of his lay advocate. ECF No. 23 at 10. However, as explained above, due process did not entitle him to a lay advocate in this case. Notwithstanding the postponements, he did in fact mount a defense to the charge, denying Sergeant Mitchell's account, obtaining a witness statement from another inmate, and requesting video evidence which was reviewed by the hearing officer. Based on the evidence, the hearing officer found him guilty, and there is no indication an earlier disciplinary

hearing would have had a more favorable result for him. He has not established a violation of his federal due process rights on this ground.

> D.      Impartiality of Hearing Officer

He next claims that he was denied an impartial decisionmaker. Hearing officers are "entitled to a presumption of honesty and integrity," and "the constitutional standard for impermissible bias is high." *Piggie*, 342 F.3d at 666 (citations omitted). Due process prohibits a prison official who was personally and substantially involved in the underlying incident, or in the investigation of the incident, from acting as a decisionmaker in the case. *Id.* Due process is not violated simply because the hearing officer knew the inmate, presided over a prior disciplinary case with that inmate, or had some limited involvement in the event underlying the charge. *Id.* The Seventh Circuit has recognized that the prison environment will necessarily involve some "mixing of roles" among prison staff who serve as hearing officers, "yet it is clear from *Wolff* that the Constitution does not require prisons to import professional decisionmakers such as administrative law judges to run the disciplinary process." *White*, 266 F.3d at 767.

Mr. Rogers does not argue—nor does the record show—that the hearing officer was involved in the underlying incident leading to the disciplinary charge or the investigation of the incident. Instead, his argument is that the hearing officer was biased because she was a defendant in an unrelated civil rights suit he filed. The Seventh Circuit has held that being a defendant in an unrelated lawsuit does not automatically disqualify a prison employee from serving as a disciplinary hearing officer in an inmate's case. *Piggie*, 342 F.3d at 667. Instead, it must be determined on a case-by-case basis whether due process required disqualification. *Redding v. Fairman*, 717 F.2d 1105, 1113 (7th Cir. 1983).

Mr. Rogers does not provide the docket number of his prior lawsuit, but he appears to be referring to *Rogers v. Neil, et al.*, 3:22-CV-691-DRL-SJF (N.D. Ind. filed Aug. 23, 2022), a civil rights case filed in this District around the same time as the disciplinary proceeding. He sued twelve prison staff members, including Lieutenant Castaneda, after he was administered Narcan for an apparent overdose, which he claimed was unnecessary and a violation of his Eighth Amendment rights. *Id.*, ECF No. 1. The complaint was not screened under 28 U.S.C. § 1915A—and thus no defendants were served—until March 2023, which was four months after Mr. Rogers was found guilty of battery. *Id.*, ECF No. 10. Additionally, the court dismissed the claim against Lieutenant Castaneda at screening and she was therefore never served with the complaint. *Id.*

Based on these facts, no disqualification was necessary. Lieutenant Castaneda was one of twelve defendants named in Mr. Rogers' suit and was promptly dismissed as a defendant for failure to state a claim. It is unlikely she was even aware of the civil rights case when the disciplinary hearing occurred as the case had not yet been screened. As the Seventh Circuit has explained:

> From a practical standpoint, requiring each staff member who is the subject of a separate lawsuit to disqualify himself from sitting in judgment of that inmate would heavily tax the working capacity of the prison staff. Additionally, prisoners may file many lawsuits naming multiple defendants. If every named defendant in a prisoners' rights lawsuit must be disqualified from sitting on the [disciplinary hearing board], such a litigation strategy would vest too much control in a prisoner to determine the [board's] make-up.

*Redding*, 717 F.2d at 1113. He has not established impermissible bias on this ground. Likewise, any argument that the hearing officer was biased because she rejected his account and found him guilty is also unavailing. *Liteky v. United States*, 510 U.S. 540, 555 (1994). This claim is denied.

As a final matter, Mr. Rogers moves for the production of "exculpatory evidence." ECF No. 22. As best as can be discerned, he believes there may be additional camera evidence or

confidential staff reports relevant to the case and asks the Court to conduct an investigation into the matter. He finds it "inconceivable that the State of Indiana would not have a[] camera with zoom capabilities that would capture anything, including spit flying thru the air." ECF No. 23 at 21.

It is not the role of a federal habeas court to conduct an investigation into the charge or reweigh the evidence to make its own determination of guilt or innocence. *Webb*, 224 F.3d at 652. Mr. Rogers was entitled to request potentially exculpatory evidence at screening, but he did not request any staff reports, ECF No. 10-4, nor is there any proof other reports exist that were not made part of the record. Even if the hearing officer did consider confidential information without disclosing it to him, this does not violate due process. *White*, 266 F.3d at 767. He requested a review of the camera evidence at screening, but the hearing officer reasonably concluded that the video was inconclusive. There is nothing in the record to suggest that other video evidence existed of this incident. He may wish that there was a camera with zoom capabilities in that area of the prison or another camera located closer to his cell, but due process did not entitle him to the creation of evidence that did not already exist. *Wolff*, 418 U.S. at 556. His motion is be denied.

For these reasons, the Court:

(1) DENIES the petitioner's motion to produce evidence [ECF No. 22];

(2) DENIES the petition [ECF No. 1] and

(3) DIRECTS the Clerk of Court to close this case.

SO ORDERED on October 7, 2024.

s/ Theresa L. Springmann  
JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT